UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVA XIA and PAUL PRIVITERA,

                  Plaintiffs,

– against –

65 WEST 87TH STREET HOUSING
DEVELOPMENT FUND CORPORATION,
CHRISTINE ELBERT, SAMANTHA
PINKOWITZ, ANTHONY SARMIENTO, and
ANGELA ROJO,

                  Defendants.

**ORDER**

20 Civ. 3576 (ER)

Ramos, D.J.:

This dispute stems from a recorded telephone conversation between now-dismissed defendant Samantha Pinkowitz and Theodore Pannkoke, a claims adjuster for defendants' insurance claims administrator, Amtrust. The parties have submitted a recording of this call to the Court for *in camera* review to assess whether it is protected from disclosure by the attorney work product doctrine. For the reasons discussed below, the Court finds that portions of the conversation are privileged, as more fully set forth in this Order and Appendix 1.

    **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

Familiarity with the facts underlying this action is assumed, and these facts are discussed in more detail in this Court's decision denying Defendants' motion to dismiss. *See* Doc. 62. On March 19, 2020, Plaintiffs Eva Xia and Paul Privitera served letters on Defendants, informing them of Plaintiffs' intention to pursue litigation in connection with the denial of their application to purchase an apartment unit at 65 West 87th Street. *See, e.g.*, Doc. 44-1. On March 25, 2020, one or more Defendants contacted AmTrust, the claims administrator for Defendants' insurer, Wesco, to notify them of Plaintiffs' potential claim for coverage. Doc. 50, Pannkoke

Declaration, at ¶ 10.  On April 14, 2020, AmTrust wrote to Defendants that Wesco's general liability group would disclaim coverage under their general liability plan.  *Id.* at ¶ 13.  It wrote that it would not decline coverage under its Directors and Officers policy at that time, but reserved its rights under that policy.  *Id.*  Plaintiffs filed suit on May 7, 2020.  Doc. 1.  Soon thereafter, Mr. Pannkoke began reviewing the lawsuit "concurrently for potential liability, defenses, and coverage."  *Id.* at ¶ 15.

Samantha Pinkowitz was originally named in this lawsuit, but was dismissed on June 12, 2020.  Doc. 18.  Pinkowitz owns a unit in the same building in which Plaintiffs sought to purchase a unit, and is a shareholder and current board member in the building's coop.  Doc. 82 at 1–2.  Pinkowitz and her mother are real estate brokers, and her mother represented Orlando Rymer, the prospective seller to Xia and Privitera, in connection with the proposed sale.  *Id.* at 1.  As a result, Pinkowitz was recused from the board's review of Plaintiffs' purchase applications; this was conducted by a separate sales committee.  *Id.* at 2.

On May 18, 2020, prior to her dismissal herein, Pinkowitz contacted Pannkoke and recorded their telephone conversation.  This conversation occurred in Pinkowitz's capacity as a member of the board of 65 West 87th Street Housing Development Fund Corporation (the "Coop").  During the conversation, Pinkowitz inquired about the availability of insurance coverage.  However, Pinkowitz and Pannkoke also discussed, to the best of their knowledge, the potential merits of the lawsuit during this call.

On February 2, 2021, Pinkowitz produced to Plaintiffs an audio recording of this telephone conversation, as well as another conversation between Pinkowitz and Pannkoke on

June 9, 2020 that is not at issue here.[1]  Doc. 82 at 2.  Plaintiffs informed Defendants of the recordings on February 18, 2021, and wrote to the Court the next day to seek *in camera* review. *Id.*  Following a discovery conference on March 12, 2021, Defendants submitted the recordings to the Court for review.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(3), a document created "because of" the prospect of litigation "which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation" receives limited protection from disclosure under the attorney work product privilege. *See U.S. v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).  However, documents that "are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" do not receive protection.  *Id.* at 1202.  Where the threat of litigation is also accompanied by a non-litigation purpose for the documents at issue, "[w]hether there is work product protection turns on whether the material would have been prepared irrespective of the expected litigation . . . ." *William A. Gross Const. Assoc. Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009) (quotation marks and citation omitted, brackets in original).

When a privilege is held by a corporation and a corporate officer discloses privileged information, the Court must examine, on a case-by-case basis, whether such disclosure constitutes an implied waiver by the corporation.  *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2d Cir. 2000).  Relevant considerations in this analysis include whether the officer is counseled in the disclosure, whether that testimony was compelled, whether the disclosure was

---

[1] In their March 4, 2021 letter regarding *in camera* review, Defendants invoked work product privilege regarding the May 18, 2020 call, but not the June 9 call.  Doc. 82 at 2.  They also conceded that the final portion of the May 18 recording, capturing a conversation between Pinkowitz and an unidentified third person, is not privileged.  *Id.*

3

inadvertent, and prejudice to the opposing party. *Id.* at 186–89. The core question in this analysis is whether disclosure was a "deliberate attempt *on the part of the corporation*" to put the material at issue. *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 505 (S.D.N.Y. 2019) (quoting *In re Grand Jury Proceedings*, 219 F.3d at 188 (emphasis in original)).

### III.  DISCUSSION

#### A.  Portions of the May 18, 2020 Conversation are Privileged

There is no doubt that the conversation between Pinkowitz and Pannkoke was made "because of" the prospect of litigation. Indeed, the call was made shortly after Pinkowitz was served with process in this action. In this respect, Defendants need only to show that Pinkowitz "actually thought [she] was threatened with litigation and . . . that [her] belief was reasonable," which they have easily done. *See Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 475 (S.D.N.Y. 2003).

However, even when investigations into both a coverage determination and the merits of a lawsuit are conducted simultaneously, courts have attempted to distinguish these two functions, because an insurer's investigation into whether coverage is available is routinely done "in the ordinary course of business." *Tudor Ins. Co. v. Stay Secure Const. Corp.*, 290 F.R.D. 37, 41 (S.D.N.Y. 2009) (quoting *Adlman*, 134 F.3d at 1202). Thus, to fully invoke the attorney work product privilege for this recording, Defendants must not only establish that the recording was "created because of anticipated litigation," but also that the recording differs from a garden variety coverage discussion insofar as it tends "to reveal mental impressions, conclusions, opinions or theories concerning the litigation." *U.S. v. Adlman*, 134 F.3d at 1195 (2d Cir. 1998).

Accordingly, the Court finds that much of the May 18, 2020 conversation is privileged, because it involves not only discussion regarding the availability of coverage, but Pinkowitz's

and Pannkoke's impressions of the potential merits of the litigation.  It is true that Pinkowitz initiated the conversation to ask Pannkoke about the availability of coverage, and that Pannkoke at times answered coverage-related questions.  However, this conversation is intertwined with Pinkowitz and Pannkoke's discussion regarding the complexity of the Fair Housing Act and Plaintiffs' application to purchase the unit.  These portions of the recording fall into the category of documents discussed in *Adlman*, because they were "created because of the prospect of litigation, analyzing . . . that litigation."  134 F.3d at 1202.  Such discussions do not lose protection merely because they were "created in order to assist with a business decision."  *Id.*  In other words, this recording differs from a business record that merely assesses the existence of coverage, which might be "prepared in the ordinary course of business," because it captures the opinions of Pinkowitz, a board member, and Pannkoke, regarding the litigation itself.  *Id.*  Indeed, the Court has already ruled that Pannkoke's internal notes dated the same day were privileged, based on Pannkoke's declaration indicating that he had discussed the "underlying facts, liability, defense and coverage" with a board member—presumably Pinkowitz.  Doc. 50 at ¶ 21.v.

However, there are nevertheless several portions of the recording in which Pinkowitz's and Pannkoke's discussion is limited to the availability of coverage.  The specific portions of this conversation that are protected by privilege are delineated in Appendix 1.

### B. Most of the Applicable Privilege Belongs to the Coop

Plaintiffs first argue that any privilege attached to the conversation belongs to Pinkowitz individually because it would stem from discussion of Pinkowitz's "personal defense," not the Coop's defense.  Doc. 77 at 3.  However, with the exception of a brief moment in the

conversation in which Pannkoke asks Pinkowitz about any reactions to the Complaint specific to her personal involvement, this argument is not supported by the substance of the conversation.[2]

This should not be surprising, as Pinkowitz was sued in her capacity as a member of the Coop's board of directors, and the insurance policy was between Wesco and the Coop. *See* Doc. 82 at 2. Plaintiffs cite to the fact that "Amtrust appears to have offered to provide [Pinkowitz] with separate conflict counsel," to argue that this conversation must have been in furtherance of a personal defense by Pinkowitz. Doc. 77 at 2. However, at the time of the call, Amtrust had made no decision about the availability of coverage under the Directors and Officers policy, nor had it made a determination that Pinkowitz should be represented by separate counsel. Indeed, their discussion—and more specifically, Pannkoke's impressions of the situation—focused on the potential merits of the claims against the board as a whole, not the merits of any separate, individual defenses Pinkowitz might have. It is true that the parties at times touched on Pinkowitz's lack of personal involvement in the rest of the board's deliberations, which likely informed the eventual decision to provide her with separate conflict counsel. However, this does not change the fact that Pinkowitz's conversation with Pannkoke was made to inquire about the lawsuit and insurance coverage in her capacity as a Coop board member, that the Coop (and not Pinkowitz herself) was the insured, and that the substance of their conversation, with the brief exception explained above, did not venture into any potential personal defenses on Pinkowitz's behalf.[3]

---

[2] As set forth in Appendix 1, the Court deems that the privilege regarding this brief portion of the conversation only belongs to Pinkowitz, and that it thus may be produced. However, as discussed *infra*, the Court does not find that Pinkowitz has waived any privilege belonging to the Coop.

[3] In the analogous context of attorney-client privilege, an individual employee or corporate officer may assert personal privilege only when they "sought [ ]or received legal advice from [corporate counsel] on personal matters." *See United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 119 F.3d 210, 216 (2d Cir. 1997). Such advice must clearly be sought "in [the employee's] individual capacity" and it "must relate to the individual's interests, as opposed to the corporation's." *U.S. v. Daugerdas*, 757 F. Supp. 2d 364, 370 (S.D.N.Y.

### C. The Coop Has Not Waived the Privilege

To assess whether a corporate officer has waived a corporation's work product privilege through the disclosure of privileged information, courts consider the same "fairness concerns" that exist in the context of a potential attorney-client privilege waiver. *See In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000). While both sides make reasonable arguments, on the whole these considerations weigh in favor of protecting privileged portions of this conversation from disclosure. First, the record does not show that the disclosure of this conversation was a deliberate act by the Coop. Rather, the Coop's position throughout this litigation has been that its conversations with Amtrust, which must necessarily occur through its officers, have been privileged. *See In re Grand Jury Proceedings*, 219 F.3d at 189–90 (a corporate officer who had been subpoenaed to testify in his individual capacity did not necessarily waive privilege as to the company when the company had insisted on preserving its privilege). Indeed, Defendants and their counsel did not even know that these recordings existed until informed by Plaintiffs in February 2021.

Thus, this is not a situation where a party has intentionally put privileged materials at issue to gain a strategic advantage by asserting, for example, an advice of counsel defense. In *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 504–05 (S.D.N.Y. 2019), the court considered whether a corporate officer, who had been deposed in an individual capacity, had waived privilege belonging to the corporation by disclosing certain confidential communications. The court found no waiver, reasoning that the waiver doctrine rested largely on the notion that it would be unfair for a corporation to deliberately use the privilege both "as a shield and a sword." *Id.* at 505 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). The court in

---

2010). Similarly here, the parties' discussion of the potential merits of Plaintiffs' claim was relevant to the Coop's interest as a whole, as opposed to the individual interest of Pinkowitz.

*Parneros* found this element to be "completely absent," because the corporation had disclaimed any effort to rely on the privileged material. *Id.* The same is true here—counsel for the Coop and the other defendants did not know about the recording until notified by Plaintiffs of the production from Pinkowitz. Doc. 82 at 2. After reviewing the recording, Defendants asserted that it was privileged, consistent with their prior position that Pannkoke's notes memorializing the conversation were privileged.

      The circumstances of the production also weigh toward a finding of no waiver. This recording was produced to Plaintiffs pursuant to a subpoena to Pinkowitz in her capacity as a third-party witness. Doc. 77 at 2.[4] While the full correspondence between Pinkowitz and Plaintiffs surrounding this production is not before the Court, there is no present indication that Pinkowitz would have voluntarily disclosed the contents of this recording were it not for Plaintiffs' subpoena compelling this production. *Cf. Parneros*, 332 F.R.D. at 504 (weighing the fact that the witness was "legally obligated to participate in his or her examination by the opposing attorney"); *see also In re Grand Jury Proceedings*, 219 F.3d at 186 (weighing the fact that testimony occurred in the grand jury context). Indeed, the nature of this disclosure distinguishes this case from many of the authorities relied on by Plaintiffs, in which materials were disclosed without legal compulsion, and outside of the third-party witness context. *See, e.g.*, *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993) (privilege waived when corporate officer voluntarily provided a memorandum to the SEC); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) (finding that, in voluntarily disclosing the

---

[4] The Court acknowledges that, unlike the corporate officer in *In re Grand Jury Proceedings*, Pinkowitz responded to the subpoena through counsel. However, the Court nevertheless finds that the totality of circumstances weigh against waiver, particularly because Pinkowitz was clearly acting in her capacity as a third-party witness. *See Parneros*, 332 F.R.D. at 504–05 (the presence of counsel was insufficient to constitute a waiver of corporate privilege when there was an absence of evidence that the corporation acted purposefully in disclosing any privileged information).

evidence, "[defendant] was not acting in his individual capacity, but as a representative and agent of [the corporate entity], in pursuit of [the entity's] interests."); *Wechler v. Squadron, Ellenoff, Plesent & Sheinfled, LLP*, 994 F. Supp. 202, 213 (S.D.N.Y. 1998) (finding that a corporate officer could engage in voluntary "whistleblowing" activity to the SEC even if this meant disclosing privileged information); *cf. In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373 (D.C. Cir. 1984) ("The distinction between voluntary disclosure and disclosure by subpoena is that the latter, being involuntary, lacks the self-interest which motivates the former.  As such, there may be less reason to find waiver in circumstances of involuntary disclosure.").

Finally, courts should consider the possibility of prejudice to the opposing party if the materials are not disclosed. *In re Grand Jury Proceedings*, 219 F.3d at 188.  However, Plaintiffs have not made any particularized showing of prejudice regarding this conversation, and the Court has not independently identified any basis on which disclosure would be merited in the interest of fairness.

### IV.    CONCLUSION

For the foregoing reasons, the Court finds that the May 18, 2020 conversation between Pinkowitz and Pannkoke is partially protected from disclosure by the attorney work product privilege.  The parties may not rely on any of the portions of the recording identified as privileged in the attached Appendix 1.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 77.

It is SO ORDERED.

Dated:   April 21, 2021
             New York, New York

EDGARDO RAMOS, U.S.D.J.

**Appendix 1**

| Time Stamp | Privilege Determination |
|---|---|
| 0:00–5:02 | Not Privileged |
| 5:03–19:54 | Privileged |
| 19:55–21:35 | Privilege belonged to Pinkowitz, who waived it through disclosure. |
| 21:36–41:59 | Privileged |
| 42:00–48:52 | Not Privileged |
| 48:53–1:00:19 | Privileged |
| 1:00:20–1:07:21 | Not Privileged |